IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN KEITH WEST,

     Plaintiff,

                                 **Civil Action 2:13-cv-08**

     v.                         **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

## OPINION AND ORDER

Plaintiff, Brian Keith West, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 19), and the administrative record (ECF No. 9). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

## I.     BACKGROUND

Plaintiff protectively filed his applications for benefits on October 23, 2009, alleging that he has been disabled since August 1, 2008, at age 36. (R. at 141-53.) Plaintiff alleges disability as a result of neck and spine issues. (R. at 170.) Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before Administrative Law Judge Christopher B. McNeil ("ALJ"). The ALJ held a hearing on August 26, 2011, at which Plaintiff, represented by counsel, appeared and testified. (R. at 14-23.) Michael A. Klein, Ph.D., a vocational expert, also appeared and testified at the hearing. (R. at 23-29.) On September 15,

2011, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 35-50.)  On November 6, 2012, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-4.)  Plaintiff then timely commenced the instant action.

## II.  HEARING TESTIMONY

**A.     Plaintiff's Testimony**

At the August 26, 2011 hearing, Plaintiff testified that he stopped working because of numbness in his hands and arms, loss of strength, extreme pain in his neck and shoulder, severe lack of ability to sleep, and an overall decline in his ability to function.  (R. at 15.)  Plaintiff testified that he had two surgeries to address his neck pain.  Plaintiff stated that his March 2009 surgery did not resolve his symptoms.  (*Id.*)  He testified that he had a second surgery and was considering a third surgery to fuse his "whole" neck.  (*Id.*)  Plaintiff stated that the third surgery would impact his mobility because  he would not be able to turn his neck at all.  (R. at 16-17.)  He testified that it was difficult for him to support his neck for "any length of time."  (R. at 16.)  He explained that any movement of his neck causes pain.  (R. at 17.)  As of the hearing, Plaintiff reported that he continued to have tingling and numbness in his hands, loss of strength, tremors, migraine headaches, and sleep apnea.  (R. at 16.)

Plaintiff testified that he suffers migraine headaches approximately two to three times per week.  (R. at 19.)  He noted that he tries to stay medicated so he does not "wind up with the migraines."  (*Id.*)  When he gets a migraine, he takes his medication and lies down, sometimes all night.  (R. at 20.)

Plaintiff described some of the side effects he experiences from taking his medications. He stated that he has lost between 80-100 pounds due to his medications, which he indicated cause appetite changes. (R. at 18.) He testified that his medications affect his judgment. (R. at 19.) He also testified to "horrible" memory. (R. at 20.) He explained that he needs daily reminders from his wife to address household tasks. (*Id.*)

Plaintiff testified that he tries to help take care of his family around the house and that completing "two loads of laundry a day [is] quite a feat for [him]." (R. at 17.) Plaintiff stated that it is "virtually impossible" for him to drive due to his pain. (*Id.*) Plaintiff testified that it is difficult for him to sit still for long enough to watch a movie with his children. (R. at 19.) He testified that he goes for short walks with his wife in order to get out of the house. (R. at 20.) Plaintiff stated that he gets about two or three hours of sleep a night and naps during the day, for a total of four or five hours of sleep total. (R. at 21.)

**B.      Vocational Expert Testimony**

Michael Klein, testified as the vocational expert ("VE") at the administrative hearing. (R. at 23-29.) The VE testified to Plaintiff's past relevant employment as a truck driver, at the semi-skilled, medium exertional level; machinist, at the skilled, medium exertional level; and building repairer, at the skilled, medium exertional level. (R. at 25.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC")[1] to the VE. The ALJ asked the VE to assume an individual with Plaintiff's age, education, and work experience who could lift 20 pounds occasionally and 10 pounds frequently;

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

3

stand and/or walk about six hours of an eight hour work day; and occasionally climb ropes,

ladders, and scaffolds and balance. (R. at 26.) Based on this hypothetical, the VE acknowledged

that Plaintiff could not perform his past relevant work because his past work was all at the

medium exertional level and his RFC was at a light profile. (*Id.*) The VE further testified that the

individual could hypothetically perform light-strength jobs such as cleaner, with 20,000 local jobs

and a million nationwide jobs; assembler of small products, with 15,000 local jobs and 350,000

nationwide jobs; and inspector, with 200 local jobs and 350,000 nationwide jobs. (R. at 27.)

### III.    MEDICAL RECORDS[2]

Plaintiff first saw orthopaedic specialist James Weiss, M.D., in October 2008. (R. at

209-10.) He was self-referred and seeking evaluation and treatment of neck, mid-back, low back,

tailbone, and bilateral hip pain. Plaintiff reported that his pain began approximately two years

earlier and was not related to an accident or injury. He described his pain as constant, achy, "at

times knife-like," and radiating through his scapula and shoulders. He denied any pain in his

upper extremities. He complained of tingling in his hands with cold weather and weakness in his

hands. He denied dropping objects. Plaintiff also reported experiencing sleep disturbance related

to pain. He indicated that his activity was limited by the pain and that he has learned to modify

his activities as needed to reduce his pain. (R. at 209.) Examination of the cervical spine

revealed that extension and turning to the right produced slight right-sided neck pain. (R. at 210.)

An MRI of Plaintiff's cervical spine on October 31, 2008, showed intervertebral

osteochondrosis at the C4-5, C5-6, and C6-7 levels; uncinate spurs narrowing the intervertebral

---

[2] Plaintiff does not challenge the Commissioner's findings with respect to his alleged mental impairments. Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged physical impairments.

foramina bilaterally at the C4-5 level with a spondylotic bar impinging on the anterior funiculus of the cord; central canal stenosis at C4-5; and uncinate spurs at the C5-6 and C6-7 levels.  (R. at 213-14.)  An MRI of the lumbar spine showed disc dessication at L4-5 with mild concentric disc bulging at L4-5.  (R. at 215.)

When seen by neurosurgeon Kelly J. Kiehm, M.D., on February 27, 2009, Plaintiff complained of significant neck and arm pain and demonstrated weakness and numbness in his arms and hands.  (R. at 256.)  Dr.  Kiehm diagnosed Plaintiff with cervical stenosis, cervical spondylosis, cervical radiculopathy, and cervicalgia.  Dr. Kiehm recommended an anterior cervical discectomy.  (R. at 257.)

Plaintiff underwent an anterior cervical discectomy at C4-5 on March 19, 2009.  (R. at 258-60.)  Post-operative records from Dr. Kiehm indicate that Plaintiff continued to report pain. (R. at 254-55.)  X-rays of his cervical spine taken on April 30, 2009, showed a stable appearing fixation plate at C4-5 without listhesis, no fractures, and mild osteoarthritic change at C5-C7.  (R. at 283.)

Plaintiff presented to the emergency room in June 2009, with complaints of neck pain, shoulder pain, and tingling in his left upper extremity.  He reported that over the Memorial Day weekend, he watched his son race and get into an accident.  Plaintiff fell while trying to run to his son and had increased neck pain since.  (R. at 224.)  An MRI taken of Plaintiff's cervical spine showed osteophytes at C4-5, resulting in moderate spinal stenosis at C5-6; disc bulge and central disc protrusion at C5-6, resulting in moderate spinal stenosis; disc protrusion and endplate osteophyte complex, resulting in severe foraminal narrowing on the right; and disc bulge at C6-7, resulting in mild spinal stenosis.  (R. at 227.)

Plaintiff reported increased activity to Dr. Kiehm in September 2009.  Dr. Kiehm noted that Plaintiff was "pretty happy with how he is doing," that he was "progressing very nicely," and that he was  "doing very well."  (R. at 253.)  In November 2009, Dr. Kiehm recommended cervical facet injections.  (R. at 252.)  On November 11, 2009, Dr. Kiehm noted that Plaintiff had experienced difficulty with his neck pain since his cervical surgery.  She opined that Plaintiff was "unable to work secondary to his neck pain."  (R. at 251.)

When Plaintiff saw his chiropractor, Alan Newman, D.C., in December 2009, he reported pain in his neck, right lower back, right hip, and wrists.  On examination, Dr. Newman found decreased range of motion, spasm, and tenderness in Plaintiff's lumbar and cervical spines.  (R. at 264-65.)

In March 2010, state-agency physician, W. Jerry McCloud, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity.  (R. at 315-22.)  Dr. McCloud opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in a workday; sit for about six hours in a workday; and that his ability to push and pull was unlimited.  (R. at 316.)  According to Dr. McCloud, Plaintiff was limited to occasionally climbing ladders, ropes, or scaffolds and balancing.  (R. at 317.)  Dr. McCloud opined as follows:

> The severity of the symptoms and its alleged effect on function is not consistent with all the medical and nonmedical evidence.  [Plaintiff] states that he can only walk for 45 minutes.  However, most recent exams note no deficits in gait or station. [Plaintiff] states he suffers from headaches. However, the medical evidence does not support a diagnosis of headaches.

(R. at 320.)  In August 2010, state-agency physician, Teresita Cruz, M.D., affirmed Dr. McCloud's assessment.  (R. at 359.)

6

On March 22, 2010, and MRI of Plaintiff's cervical spine demonstrated post-surgical changes at the C4-5 level with no abnormality; some central and right disc protrusion with suggested effacement and filling of the right neural foramen at C5-C6; and mild subligamentous bulge at C6-7.  (R. at 327.)

On May 12, 2010, due to ongoing complaints of neck pain and bilateral hand numbness and tingling, Dr. Kiehm order a CAT scan myelogram.  The CAT scan myelogram showed central disc bulging at C5-6 with minor degenerative hypertrophic spurring, mild right-sided neural foraminal narrowing at C5-6, and post-operative changes of fusion at C4-5 without evidence of stenosis or disc herniation.  (R. at 354-58.)

On June 10, 2010, Plaintiff underwent an anterior cervical discectomy and an anterior cervical fusion and fixation at C5-6.  His post-operative diagnoses were cervical stenosis, cervicalgia, and cervical radiculopathy.  (R. at 351-52.)  Post-operative follow-up on July 9, 2010, indicated that Plaintiff was doing "pretty well," but that he had some difficulty swallowing and experienced  continuing (although decreased) neck pain, as well as numbness and tingling in his hands and arms.  (R. at 350.)

Plaintiff underwent physical therapy in September and October 2010.  (R. at 360-73.) During his initial evaluation, Plaintiff reported "laying around [and] supporting [his] head since surgery."  (R. at 362.)  Plaintiff rated his headache pain at a level of 8 on a 0-10 visual analog scale.  (R. at 365.)  His treatment included therapeutic exercise, both aquatic and land based, together with ultrasound and manual therapy for assisted pain modulation.  Plaintiff was discharged from physical therapy in November 2010 for planning based on further diagnostic studies for low back pain.  The treating therapist noted that Plaintiff was able to make significant

7

progress when aquatic exercises were introduced, including modulating lumbar pain and allowing focus on cervical and scapular stabilization strength. (R. at 361.)

Plaintiff presented to the emergency room in December 2010, complaining of headaches. (R. at 374-83.) He reported nausea, vomiting, and photosensitivity. (R. at 381.) A head CT was negative. (R. at 380.)

The record contains treatment notes from Frederick Carroll, M.D., dated from January through June 2011. (R. at 324-48, 388-98, 402-12.) Dr. Carroll completed a medical assessment on March 11, 2011, wherein he opined that Plaintiff could occasionally lift up to 15 pounds, frequently lift less than 5 pounds, stand and walk for 2 to 3 hours in an eight-hour workday, and sit for 4 to 6 hours in an eight-hour workday. (R. at 385-87.) Dr. Carroll also opined that Plaintiff could never climb, crouch, kneel or crawl, and could only occasionally balance and stoop. (R. at 386.) Dr. Carroll noted that Plaintiff "needs to sit in a position which provides neck support." (R. at 385.)

An MRI of Plaintiff's lumbar spine on January 6, 2011, showed disc desiccation at the L4-5 level, but no focal disc protrusion or extrusion. (R. at 412.)

## IV. THE ADMINISTRATIVE DECISION

On September 15, 2011, the ALJ issued his decision. (R. at 35-50.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.      Is the claimant engaged in substantial gainful activity?
    2.      Does the claimant suffer from one or more severe impairments?
    3.      Do the claimant's severe impairments, alone or in combination, meet or

gainful activity since August 1, 2008. (R. at 40.) The ALJ found that Plaintiff had the severe

impairment of degenerative disc disease. The ALJ further found that Plaintiff's headaches,

alleged sleep apnea, adjustment disorder with depressed mood, and anxiety disorder are not

severe impairments. (*Id.*) He found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

Part 404, Subpart P, Appendix 1. (R. at 44.) At step four of the sequential process, the ALJ

evaluated Plaintiff's RFC. The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to lift 20 pounds occasionally
> and 10 pounds frequently; push or pull to the same extent using hand or foot
> controls; stand or walk about 6 hours in an 8-hour workday; and sit about 6
> hours in an 8-hour workday. The claimant cannot more than occasionally
> balance or climb ladders, ropes, or scaffolds.

(R. at 44.) In reaching this RFC determination, the ALJ adopted the RFC assessments from Drs.

McCloud and Cruz. (R. at 45.) The ALJ assigned "very little weight" to the November 2009

opinion of Dr. Kiehm, finding that her statement regarding Plaintiff's inability to work was an

opinion regarding disability which is an issue reserved for the Commissioner. (*Id.*) The ALJ

assigned less weight to Dr. Carroll's March 2011 opinion, noting that it was not supported by Dr.

Carroll's treatment notes or by the record as a whole. (*Id.*) He also concluded that Plaintiff's

"testimony regarding the extent of such symptoms and limitations [was] not fully credible" and

---

<div style="margin-left: 2em;">

      equal the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the claimant
perform his or her past relevant work?

5.     Considering the claimant's age, education, past work experience, and residual functional
capacity, can the claimant perform other work available in the national economy?

</div>

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

his testimony "was not persuasive to establish an inability to perform the range of work assessed herein." (R. at 48.) The ALJ concluded that the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations Plaintiff alleged.

Relying on the VE's testimony, the ALJ determined that even though Plaintiff was unable to perform his past relevant work, he was able to perform jobs that exist in significant numbers in the state and national economy. (R. at 48-49.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 50.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

10

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  LEGAL ANALYSIS

Plaintiff raises a single challenge to the ALJ's decision.  Specifically, Plaintiff contends that the ALJ committed reversible error in his weighing of the opinion medical evidence, including the work-preclusive opinions of Plaintiff's treating physicians.[4]  (ECF No. 14.) Plaintiff asserts that the ALJ should have given more weight to the assessments of Plaintiff's treating physicians, Drs. Frederick Carroll and Kelly Kiehm, and less to those of the state-agency physicians, Drs. Jerry McCloud and Teresita Cruz.  The parties do not dispute that Drs. Carroll and Kiehm qualify as a treating sources.

---

[4]  Plaintiff also notes summarily that "portions of the vocational expert's testimony were inaudible and could require a remand for the clarification of vocational testimony."  (Pl.'s Brief 3, ECF No. 14.)  The Court concludes, however, that Plaintiff's argument has no merit.  There is no basis for remand where "pertinent portions of the vocational expert's testimony on which the ALJ relied were sufficiently audible as evidenced by the transcript."  *Collins v. Comm'r of Soc. Sec*, No. 10-15000, 2012 WL 899348, at *11 (E.D. Mich. Feb. 21, 2012).  Similarly, here, the inaudible portions of the transcript do not provide a basis for remand where the portions of his testimony on which the ALJ relied are clear.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

12

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

**A.  Dr.  Kelly Kiehm**

Dr. Kiehm, Plaintiff's surgeon, opined that Plaintiff is "unable to work secondary to his neck pain." (R. at 251.) Dr. Kiehm did not, however, elaborate or provide any specific physical

13

limitations to support this conclusion. The ALJ reviewed and considered Dr. Kiehm's treatment notes and opinion. For example, the ALJ noted that, on April 17, 2009, Dr. Kiehm observed that Plaintiff was doing "pretty well" and advised him that he could get back to his normal activities. (R. at 46, 255.) The ALJ also pointed to Dr. Kiehm's September 18, 2009 note that physical therapy was helping Plaintiff, he had increased range of motion, and he was experiencing less pain and stiffness in his neck. (R. at 46, 253.) The ALJ assigned Dr. Kiehm's opinion "very little weight," explaining that her treatment notes were inconsistent with her opinion that Plaintiff was "unable to work," and, in any event, the "final responsibility for determining if a claimant is 'disabled' or 'unable to work' is reserved for the Commissioner." (R. at 45.)

The ALJ correctly pointed out that "'the determination of disability is the prerogative of the Secretary, not the treating physician.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). Because the determination of disability is reserved to the Commissioner, the ALJ "will not give any special significance to the source of an opinion" on that issue. 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927(d)(3); *see also Bass v. McMahon*, 499 F.3d at 511 (explaining that the conclusion of disability is reserved to the secretary and that "no special significance will be given to opinions of disability, even if they come from a treating physician"); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. App'x 801, 804 (6th Cir. 2008) (concluding that a physician's disability determination was a decision reserved for the Commissioner and therefore not entitled to any special significance). The ALJ therefore did not err in discounting the value of Dr. Kiehm's opinion and gave good reasons for not affording it controlling weight.

14

**B.    Dr. Frederick Carroll**

Dr. Carroll is Plaintiff's family physician.  In his March 11, 2010, assessment, Dr. Carroll opined that Plaintiff's impairments impeded his ability to lift, stand, sit, and walk.  (R. at 385.) The Court concludes that the ALJ did not err in according "less weight" to Dr. Carroll's opinion.

As set forth above, Dr. Carroll opined that Plaintiff was significantly more limited in his exertional capabilities than the state-agency physicians found.  The ALJ assigned Dr. Carroll's assessment "less weight" because his opinion was not fully supported by his own treatment records and was inconsistent with the record as a whole.  (R. at 45.)  The ALJ further found that Dr. Carroll's assessment was "materially dependent on the claimant's subjective reports of symptoms and limitations . . . " and also inconsistent with the "credible portion of the claimant's activities of daily living evidence."  (*Id.*)

Plaintiff first argues that the ALJ failed to properly identify the reasons for discounting Dr. Carroll's opinion.  Specifically, Plaintiff contends that the ALJ's treatment of Dr. Carroll's assessment was "not specific enough to allow for meaningful review" because it did not "explain which factors were properly considered in accordance with 20 C.F.R. § 404.1527(c)(2)."  (Pl.'s Mot.  11, ECF No.  14.)

The Court finds that the ALJ complied with the necessary procedural requirements in determining how much weight to assign the medical opinions.  The ALJ provided specific reasons for assigning less weight to Dr. Carroll's assessment.  First, the ALJ noted that Dr. Carroll's assessment was not fully supported by his own treatment records and with the record as a whole. *See Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006) (concluding that an ALJ's assessment that a treating physician's conclusions were "not well supported by the overall

evidence of record and [were] inconsistent with other medical evidence of record" was a "specific reason for not affording controlling weight" to the treating physician). Second, the ALJ concluded that Dr. Carroll's assessment materially relied upon Plaintiff's subjective reports, which the ALJ found not to be credible.[5] *See Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 838 (6th Cir. 2005) (holding that the ALJ did not err in discounting a treating physician's opinion that was based on "the claimant's subjective statements concerning [claimant's] own limitations"); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he [or she] sets forth a reasoned basis for [his] or her rejection."); *Stoker v. Comm'r of Soc. Sec.*, No. 3:06CV2486, 2008 WL 1775414, at *6 (N.D. Ohio Apr. 18, 2008) (concluding that an ALJ did not err in discounting treating physicians' opinions that were based "substantially on [claimant's] self-reported conditions"). The ALJ, therefore, offered good reasons for discounting the portions of Dr. Carroll's assessment that were based on Plaintiff's subjective complaints of pain.

Plaintiff also contends that the ALJ should have given Dr. Carroll's March 2011 medical assessment more weight because his opinion was consistent with the restricted lifting capabilities to which Plaintiff testified at the hearing and with Dr. Kiehm's assessment that Plaintiff is disabled. This argument is without merit. "When evaluating whether substantial evidence supports the Commissioner's conclusion, [the Court] must examine the administrative record as a whole." *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. App'x 692, 695 (6th Cir. 2007) (citing *Kirk*

---

[5] Significantly, the ALJ also concluded that Plaintiff's testimony regarding his symptoms and limitations was "not fully credible." (R. at 48.) Plaintiff does not challenge the ALJ's credibility assessment.

16

*v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 536 (6th Cir. 1981)); *see also* 20 C.F.R. §

404.1527 (c)(3) ("Generally, the more consistent an opinion is with the *record as a whole*, the

more weight we will give to that opinion") (emphasis added).  As addressed above, the ALJ made

clear that he was affording less weight to the opinions of Drs. Carroll and Kiehm because they

were inconsistent with the record as a whole.  The ALJ was under no obligation to credit Dr.

Carroll's opinion more because it was consistent with Plaintiff's testimony and/or the opinion of

another medical source.

  Finally, Plaintiff asserts that the opinions of the state-agency reviewers were less reliable

because they were not privy to the entire medical record.   Specifically, Plaintiff asserts the ALJ

should have afforded less weight to the opinions of Drs. McCloud and Cruz because they were

not able to examine Plaintiff's most recent medical information, "including ongoing pain

complaints despite completion of physical therapy, ongoing complaints of headaches,

recommendation of epidural steroid injections, [and] updated radiological evidence . . . ."  (Pl.'s

Statement of Errors 14, ECF No. 14.)

  Plaintiff's argument is not well taken.  Because the administrative hearing occurs after the

RFC assessment, "the administrative record often includes subsequent/additional medical

evidence from the period of time between the initial disability application and the administrative

hearing."  *Tyree v. Astrue*, No. 3:09-1091, 2010 WL 2650315, at *4 (M.D. Tenn.  June 28, 2010)

(citing 20 C.F.R. §404.1537(d)(4)).  Where state-agency physicians do not have access to the

entire medical record, there must be "some indication that the ALJ at least considered these facts

before giving greater weight to an opinion that is not 'based on a review of a complete case

record.'"  *Blakely*, 581 F.3d at 409(quoting *Fisk v. Astrue*, 253 Fed. App'x 580, 585 (6th Cir.

2007)). Here, the ALJ reviewed and considered Plaintiff's entire medical record, including the evidence to which the state-agency physicians were not privy. (*See, e.g.,* R. at 42.) Further, the ALJ specifically addressed this issue, stating:

> [T]he evidence received into the record after the reconsideration determination considering the claimant's physical status does not provide any credible or objectively supported new and material information that would alter the State Agency's findings concerning the claimant's physical limitations.

(R. at 45.) Substantial evidence in the record also supports this finding. For example, one of the treatment notes upon which Plaintiff relies provides that, "[i]t does not sound like [Plaintiff's] symptoms have changed much." (R. at 399.) The newer evidence did not render the opinions of the state-agency physicians less reliable such that the ALJ erred in relying upon them.

## C.      Substantial Evidence Supports the ALJ's Conclusions

Substantial evidence supports the ALJ's proffered reasons for discounting the opinions of Plaintiff's treating physicians as well as his decision that Plaintiff is not disabled for purposes of the Social Security Act. As the ALJ noted, Dr. Carroll's treatment notes do not reflect that Plaintiff complained of numbness or loss of strength. Dr. Kiehm's treatment notes are inconsistent with her November 2009 statement that Plaintiff is unable to work. She noted that Plaintiff's condition was improving, that his complaints of numbness were to be expected, and that he could be expected to return to his normal activities. As the ALJ points out Dr. Kiehm noted in September 2009, that Plaintiff's physical therapy was helping to increase his range of motion and that he was "progressing very nicely." (R. at 253.) Additionally, the ALJ pointed out that Dr. Aurand, another of Plaintiff's treating physicians, indicated that Plaintiff complained of neck pain but that "physical examinations did not reveal any specific objective findings to support the claimant's allegations." (R. at 47.) Dr. Aurand further noted that Plaintiff was doing

18

well on medication and "trying to exercise."  (R. at 280.)  Accordingly, the Court concludes that the ALJ did not err in failing to accord greater deference to the medical opinions of Drs. Carroll and Kiehm.

### VII.  DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision.  Accordingly, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED**.


Date: March 10, 2014                               _____ /s/ *Elizabeth A. Preston Deavers* _____
                                                          Elizabeth A. Preston Deavers
                                                          United States Magistrate Judge